| | |
|---|---|
| JEREMY FAULK, | |
| Plaintiff, | Case No. 3:21-cv-00755 |
| v. | Judge Eli J. Richardson |
| | Magistrate Judge Alistair E. Newbern |
| KNOXVILLE HMA HOLDINGS, LLC et al., | |
| Defendants. | |

To:     The Honorable Eli J. Richardson, District Judge

## **REPORT AND RECOMMENDATION**

Pro se Plaintiff Jeremy Faulk initiated this action under the Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C. § 227, and state law to challenge telephone calls he received that were made on behalf of Defendants Dyersburg Health and the Jackson Madison County General Hospital District (collectively, the Hospital District or the defendants). (Doc. No. 60.) Faulk brings claims for violations of TCPA subsections (b) and (c), harassment under Kentucky law, and, in the alternative, invasion of privacy under Tennessee law. (*Id.*) The Court referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 6.)

The defendants have moved for partial summary judgment on Faulk's TCPA subsection (c) and state law claims (Doc. No. 80), to which Faulk has responded in opposition (Doc. No. 95), and the defendants have replied (Doc. No. 97). Faulk has moved for partial summary judgment on his TCPA subsection (b) claims. (Doc. No. 87.) The defendants have responded in opposition (Doc. No. 89), and Faulk has filed a reply (Doc. No. 98).

For the reasons that follow, the Magistrate Judge will recommend that the Court grant the defendants' motion for partial summary judgment and deny Faulk's motion for partial summary judgment.

## I.  Background

### A.  Factual Background[1]

The Hospital District is a non-profit hospital authority created by the Tennessee General Assembly. (Doc. Nos. 85, 97-1.) The Hospital District owns Dyersburg Health; Dyersburg Health operates West Tennessee Health Dyersburg Health Hospital in Dyersburg, Tennessee. (Doc. No. 85.) Faulk resides in Kentucky. (Doc. No. 81-1.)

The events giving rise to this action began when non-party Heather Trumble attended a medical appointment at Dyersburg Hospital on March 11, 2021. (Doc. No. 86.) Trumble and Faulk have similar telephone numbers, and the hospital's registration clerk incorrectly entered Faulk's telephone number instead of Trumble's when registering Trumble for her appointment. (*Id.*) Trumble did not have private health insurance to cover her care. (*Id.*)

Faulk states that, during the week of March 8, 2021, and on March 17, 2021, he received voicemails of prerecorded messages from Dyersburg Hospital that were intended for Trumble. (Doc. No. 87-5.) Faulk later learned that these calls were placed by Firstsource Solutions, USA, LLC (Firstsource). (*Id.*) The defendants state that Firstsource did not first call Faulk until March 18, 2021. (Doc. Nos. 82, 87-11.)

---

[1]    The facts in this section are drawn from Dyersburg Health and the Hospital District's statement of undisputed material facts (Doc. No. 86), Faulk's statement of undisputed material facts (Doc. No. 87-2), and the parties' summary judgment exhibits (Doc. Nos. 81-1–81-5, 82–85, 87-3–87-13, 91–94, 95-2–95-8).

The defendants state that Firstsource contacts patients like Trumble who do not have private health insurance to assist them in obtaining government insurance or charitable assistance for their medical bills. (Doc. No. 86.) The defendants filed a copy of the Hospital District's contract with Firstsource (identified in the contract as MedAssist), which states that the Hospital District hired Firstsource as an independent contractor. (Doc. No. 87-7.) The defendants state that "Firstsource does not sell health insurance or any other product or service to patients" and "does not request or accept any payments from patients." (Doc. No. 82, PageID# 416.) Faulk disagrees about the purpose of Firstsource's calls and asserts that Firstsource acts as a debt collector for the Hospital District. (Doc. No. 95-1.)

The parties disagree about the specific wording of the messages Faulk received but agree that the messages state that Firstsource is calling "to determine if you qualify for financial assistance programs" which is "a complimentary service provided free of charge to you by the hospital." (Doc. No. 86, PageID# 452, ¶ 26; Doc. No. 95-1, PageID# 655–56, ¶ 26.) The messages also prompt the listener to visit Firstsource's prescreening website. (Doc. Nos. 86, 95-1.)

Faulk contacted the Hospital District "through its employees or through employees of its subsidiaries" on March 17, 2021, and told a representative that Trumble could not be reached at Faulk's telephone number. (Doc. No. 87-2.) The representative told Faulk that she would "get [Trumble's contact information] pulled up" and "get [the number] changed" and "that they would take care of it and stop the calls . . . ." (*Id.* at PageID# 381.) Faulk continued to receive prerecorded messages intended for Trumble. (Doc. No. 87-13.) On June 22, 2021, Faulk received a live telephone call from a Hospital District representative trying to reach Trumble. (Doc. No. 86.) Faulk informed the representative that Trumble could not be reached at his number and ended the

3

call. (*Id.*) The representative called Faulk back and told him that she had removed Faulk's telephone number from Trumble's account and that he should not receive any more calls. (*Id.*)

Trumble again visited Dyersburg Hospital on June 27, 2021. (Doc. No. 84.) The registration clerk again incorrectly entered Faulk's telephone number as Trumble's telephone number. (*Id.*)

Faulk received another prerecorded message from Firstsource for Trumble on July 1, 2021, and continued to receive the messages on a weekly basis for several weeks. (Doc. Nos. 87-5, 87-11, 90.) Faulk did not answer Firstsource's calls or contact the Hospital District regarding the continued prerecorded messages. (Doc. Nos. 86, 95-1.) Faulk asserts that Firstsource called him twenty-eight times in total. (Doc. No. 87-5.) The Hospital District asserts that Firstsource called Faulk fourteen times. (Doc. No. 87-11.) The parties agree that Firstsource's weekly calls to Faulk ended during the week of September 20, 2021. (Doc. Nos. 87-5, 87-11.)

### B. Procedural Background

Faulk initiated this action on October 1, 2021, by filing a complaint against Knoxville HMA Holdings, LLC. (Doc. No. 1.) Faulk amended his complaint three times. (Doc. Nos. 7, 41, 59.) Faulk's third amended complaint asserts twenty-eight claims under TCPA subsection (b), twenty-eight claims under TCPA subsection (c), a Kentucky state law claim for harassment, and, in the alternative, a Tennessee state law claim for invasion of privacy.[2] (Doc. No. 60.) Faulk alleges that the defendants called him and left prerecorded messages intended for Trumble

---

[2]    The third amended complaint named Knoxville HMA Holdings, Dyersburg Health Hospital Company, LLC, West Tennessee Healthcare, Inc., Dyersburg Health, the Hospital District, Firstsource, and MSCB, Inc., as defendants. (Doc. No. 59.) Faulk filed two notices of voluntary dismissal to dismiss Firstsource, MSCB, Knoxville HMA Holdings, Dyersburg Health Hospital Company, and West Tennessee Healthcare. (Doc. Nos. 68, 72.) The Court dismissed those parties without prejudice, leaving Dyersburg Health and the Hospital District as the only remaining defendants. (Doc. Nos. 71, 75.)

beginning around March 11, 2021, and that, by September 20, 2021, he had received at least twenty-eight calls despite informing the Hospital District that it was calling the wrong number. (*Id.*) Faulk seeks compensatory damages, expenses and costs, and equitable relief. (*Id.*)

On December 7, 2022, the defendants filed a motion for partial summary judgment under Federal Rule of Civil Procedure 56 (Doc. No. 80), supported by a memorandum of law (Doc. No. 81), a statement of undisputed facts (Doc No. 86), and several exhibits (Doc. Nos. 81-1–81-5, 82–85). The defendants argue that they are entitled to summary judgment on Faulk's claims under TCPA subsection (c) because the calls in questions do not meet the regulatory definition of telephone solicitations. (Doc. No. 81.) The defendants argue that they are entitled to summary judgment on Faulk's Kentucky harassment claim because there is no evidence that they intended to contact Faulk and the calls served a legitimate purpose of assisting Trumble with her medical bills. (*Id.*) The defendants also argue that they are immune from Faulk's Tennessee invasion of privacy claim under Tennessee's Governmental Tort Liability Act (TGTLA).[3] (*Id.*)

Faulk has responded in opposition to the defendants' motion for partial summary judgment (Doc. No. 95), filed several exhibits (Doc. Nos. 95-2–95-8), and responded to the defendants' statement of undisputed material facts (Doc. No. 95-1). Faulk argues that there are genuine disputes of material fact as to whether the calls at issue in his subsection (c) claims constituted telephone solicitations. (Doc. No. 95.) Faulk also states that he pleaded his Kentucky and Tennessee state law claims in the alternative and that there is a genuine dispute of fact as to whether the defendants had the requisite intent as to the Kentucky harassment claim. (*Id.*) The defendants

---

[3]     Dyersburg Health and the Hospital District also asserted facts and made arguments regarding three calls placed by MSCB, another of their vendors. (Doc. Nos. 81.) However, Faulk states that only Firstsource's calls are at issue in this action (Doc. No. 95), and the Court has only addressed Faulk's claims related to Firstsource's calls.

replied, arguing that Faulk has failed to create genuine disputes of material fact about whether the calls at the heart of his subsection (c) claims constituted telephone solicitations. (Doc. Nos. 97, 97-1.) The defendants also argue that both of Faulk's state-law claims fail on the merits. (Doc. No. 97.)

Faulk then filed a motion for partial summary judgment (Doc. No. 87), supported by a memorandum of law (Doc. No. 87-1), a statement of undisputed material facts (Doc. No. 87-2), and several exhibits (Doc. No. 87-3–87-13, 96). Faulk argues that he is entitled to summary judgment on his TCPA subsection (b) claims because there is no genuine dispute of material fact that Firstsource is an agent of the Hospital District, that Firstsource violated the TCPA by calling Faulk with prerecorded messages without his consent, and that the Hospital District should be liable for treble damages because Firstsource acted knowingly for twenty-six of these calls.[4] (Doc. No. 87-1.) The defendants responded in opposition, arguing that Firstsource is an independent contractor, not the Hospital District's agent, and that there is a genuine dispute of fact about whether they can be held vicariously liable for Firstsource's calls. (Doc. No. 89.) The defendants also filed several exhibits (Doc. Nos. 91–94) and responded to Faulk's statement of undisputed material facts (Doc. No. 90). Faulk replied, reiterating his arguments that there is no genuine dispute of fact that the defendants are vicariously liable for Firstsource's calls. (Doc. No. 98.)

## II.      Legal Standard

In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may

---

[4]      While Faulk's third amended complaint alleged TCPA subsection (b) violations by both Dyersburg Health and the Hospital District (Doc. No. 60), his motion for partial summary judgment only seeks an entry of summary judgment against the Hospital District (Doc. No. 87). Nevertheless, both Dyersburg Health and the Hospital District responded in opposition to Faulk's motion for partial summary judgment. (Doc. No. 89.)

reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). However, if the moving party carries its initial

7

burden, the non-moving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his or her position. *Anderson*, 477 U.S. at 252. In order to proceed to trial, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id.*

## III.      Analysis

"Congress enacted the TCPA 'to protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile . . . machines and automatic dialers.'" *Charvat v. NMP, LLC*, 656 F.3d 440, 443 (6th Cir. 2011) (quoting S. Rep. No. 102-178, at 1 (1968)). The statute "contains a number of restrictions on the use of automated telephone equipment, including prohibiting the 'initiat[ion of] any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party.'" *Id.* (quoting 47 U.S.C. § 227(b)(1)(B)). Faulk's claims arise under TCPA subsections (b) and (c). (Doc. No. 60.)

Subsection (b) and its accompanying regulations, *see* 47 C.F.R. § 64.1200(a), address automated telephone calls. 47 U.S.C. § 227(b). Relevant to this action is subsection (b)'s prohibition on the use of "any automatic telephone dialing system" to make an unauthorized call "to any telephone number assigned to a . . . cellular telephone service." *Id*. § 227(b)(1)(A)(iii). Subsection (b) establishes a private right of action and provides for injunctive relief and monetary damages in the amount of $500.00 for each violation. *Id*. § 227(b)(3). It provides for treble damages in the court's discretion if the court finds that the defendant "willfully or knowingly violated th[e] subsection." *Id.*

Subsection (c) and its regulations, *see* 47 C.F.R. § 64.1200(d), establish procedures "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations"—whether live or automated—"to which they object" through, among other options,

do-not-call lists. 47 U.S.C. § 227(c)(1). The private right of action under subsection (c) also provides for injunctive relief, monetary damages in the amount of $500 per violation, and discretionary treble damages upon a finding that the defendant "willfully or knowingly violated the regulations prescribed under this subsection . . . ." *Id.* § 277(c)(5). "By enacting separate private-right-of-action provisions, . . . Congress evidenced its intent that a person be able to recover for the telemarketer's failure to institute the minimum procedures for maintaining a do-not-call list as well as the additional harm of the call being automated." *Charvat*, 656 F.3d at 449.

### A. The Defendants' Motion for Partial Summary Judgment

#### 1. TCPA Subsection (c) Claims

The defendants argue that they are entitled to summary judgment on Faulk's TCPA subsection (c) claims because there is no genuine dispute of material fact that the calls at issue were not "telephone solicitations" as defined by subsection (c)'s implementing regulations. (Doc. No. 81.)

> The relevant regulations define "telephone solicitation" as:
>
> the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message:
>
> (i) To any person with that person's prior express invitation or permission;
>
> (ii) To any person with whom the caller has an established business relationship; or
>
> (iii) By or on behalf of a tax-exempt nonprofit organization.

47 C.F.R. § 64.1200(f)(15).

The defendants argue that Firstsource's calls to Faulk fall outside of this definition for two reasons: (1) because the record evidence shows that the calls were for informational purposes only; and (2) because the defendants are nonprofit entities and Firstsource's calls on their behalf fall within the regulations' nonprofit exemption. (Doc. No. 81.)

9

The defendants' first argument is dispositive. "Informational, non-solicitation telephone calls . . . do not violate the TCPA." *Less v. Quest Diagnostics Inc.*, 515 F. Supp. 3d 715, 717 (N.D. Ohio 2021) (alteration in original) (quoting *Williams-Diggins v. Republic Servs.*, No. 3:18-cv-2313, 2019 WL 5394022, at *1 (N.D. Ohio Apr. 25, 2019)). The defendants have filed a sworn declaration from Firstsource Regional Vice President of Eligibility and Enrollment Rachel Savage stating that "Firstsource contracts with the Hospital District to contact certain patients of the Hospital District's facilities who do not have private health insurance to attempt to obtain governmental health insurance or charitable assistance for the patient."[5] (Doc. No. 82,

---

[5]     Faulk argues that portions of Savage's declaration (Doc. No. 82) should be excluded from consideration because Savage does not have sufficient personal knowledge of the case to meet Federal Rule of Civil Procedure 56's requirements. (Doc. No. 95.) "Corporate officers are considered to have personal knowledge of the acts of their corporations and an affidavit setting forth those facts is sufficient for summary judgment." *Findlay Indus., Inc. v. Bohanon*, No. 3:07-cv-1210, 2007 WL 2669191, at *4 (N.D. Ohio Aug. 14, 2007) (alteration omitted) (quoting *AGI Realty Serv. Grp., Inc. v. Red Robin Int'l, Inc.,* No. 94-3911, 1996 WL 143465, at *4 (6th Cir. Mar. 28, 1996)). The review of business records also provides a sufficient basis for personal knowledge. *See, e.g., Farnhurst, LLC v. City of Macedonia*, No. 5:13-cv-668, 2016 WL 524361, at *2 (N.D. Ohio Feb. 10, 2016) ("[F]acts based upon the affiant's review of relevant business records . . . does not offend the 'personal knowledge' requirement of Rule 56(c)(4)." (quoting *Clark v. Main St. Acquisition Corp.*, 553 F. App'x 510, 516 (6th Cir. 2014))); *Daniel v. W. Asset Mgmt., Inc.*, Civ. No. 11-cv-10034, 2011 WL 5142980, at *9–10 (E.D. Mich. Oct. 28, 2011) (holding that an affiant's review of business records satisfied Rule 56's personal knowledge requirement); *Orrand v. Keim Concrete Pumping, Inc.*, No. 2:08-cv-1046, 2010 WL 3447647, at *8 (S.D. Ohio Aug. 30, 2010) ("'[A]n affiant may testify to acts that she did not personally observe but which are described in business records.'" (quoting *AT & T Corp. v. Overdrive, Inc.*, No.1:05-cv-1904, 2006 WL 3392746, at *2 (N.D. Ohio Nov. 21, 2006))). Here, Savage's personal knowledge is based upon her role as a corporate officer and a review of Firstsource's business records. These are sufficient bases of personal knowledge to satisfy Rule 56(c).

        Faulk also argues that Savage's declaration should be excluded in its entirety because the Hospital District failed to supplement its interrogatory responses and specifically identify Savage by name. (Doc. No. 95.) Instead, the Hospital District generally listed that Firstsource's "corporate representatives" would have discoverable information. (Doc. No. 87-11, PageID# 526.) Parties may identify that "corporate representatives" generally have discoverable information but need not identify the specific corporate representatives in question. *See, e.g., Garrett v. Trans Union, L.L.C.*, No. 2:04-cv-00582, 2006 WL 2850499, at *7 (S.D. Ohio Sept. 29, 2006) (denying motion to strike affidavit of corporate representative on summary judgment despite failure to identify the name of the specific corporate representative); *Abington Emerson Cap., LLC v. Adkins*, No. 2:17-

---

PageID# 415, ¶ 4.) Savage further states that Firstsource "does not sell health insurance or any other product or service to patients" and "does not request or accept any payments from patients." (*Id.* at PageID# 416, ¶ 7.)

The copy of the transcript of the prerecorded voicemails in the summary judgment record supports the defendants' assertion that the purpose of the calls was to provide Trumble with information about her eligibility for financial assistance programs. According to Firstsource's records, the prerecorded messages that Firstsource left for Trumble at Faulk's number stated:

> Hello, this is Firstsource calling on behalf of West Tennessee Dyersburg Health Hospital calling with an important message for Heather Trumble. We're calling to determine if you qualify for financial assistance programs. This is a complimentary service provided free of charge to you by the hospital. Please press 1 now to receive an SMS text with a link to our prescreening website or call at your earliest convenience at (866) 758-1358. To expedite the prequalification process and better serve you, please reference number 104540431 when inquiring about this free service.

(Doc. No. 86, PageID# 452, ¶ 26 (citing Doc. No. 82-2, PageID# 418, ¶ 11).)

Construing this evidence in the light most favorable to Faulk, the Court finds that the defendants have carried their initial burden at summary judgment to show that Firstsource's calls were informational and fall outside the regulatory definition of telephone solicitations. The burden therefore shifts to Faulk to "designate specific facts showing that there is a genuine issue for trial" that the calls were not informational. *Celotex Corp.*, 477 U.S. at 324 (citation omitted).

Faulk first argues that there is a genuine dispute of fact as to whether Firstsource's calls were telephone solicitations because Firstsource is a debt collector. (Doc. No. 95.) In support of

---

cv-143, 2021 WL 611998, at *13 (S.D. Ohio Jan. 22, 2021) (finding defendant's listing of unnamed corporate representative adequate), *as corrected* (Feb. 8, 2021). Therefore, the Hospital District's listing that "Firstsource and its corporate representatives" possessed relevant information is sufficient, and the declaration will not be excluded in its entirety. (Doc. No. 87-11, PageID# 526.)

this argument, Faulk filed a screenshot of Firstsource's web page indicating that Firstsource offers healthcare debt-collection services to some customers. (Doc. No. 87-6.) However, Faulk has not cited any record evidence to show that the defendants contracted with Firstsource for debt collection services.

Even if Faulk had provided such evidence, he has not shown that it would be material to his TCPA subsection (c) claims. Faulk has not cited any authority to support his argument that calls from debt collectors constitute telephone solicitations under TCPA subsection (c). To the contrary, federal courts consistently find that "[d]ebt collection calls are not 'telephone solicitations' within the meaning of the TCPA" and cannot support claims for violations of subsection (c). *Holmes v. Cap. One Fin. Corp.*, Civ. Action No. 15-cv-12228, 2016 WL 4708508, at *1 (E.D. Mich. Aug. 15, 2016), *report and recommendation adopted*, 2016 WL 4662433 (E.D. Mich. Sept. 7, 2016). Courts have emphasized this finding where, as here, a defendant or its agent places debt collection calls to the wrong person by mistake. *See, e.g.*, *Meadows v. Franklin Collection Serv., Inc.*, 414 F. App'x 230, 235 (11th Cir. 2011) (holding that debt collection calls intended for non-party were not telephone solicitations under TCPA and affirming district court's grant of summary judgment to defendant on plaintiff's subsection (c) claim); *Laccinole v. Rausch, Sturm, Israel, Enerson & Hornik LLP*, No. 1:20-cv-00312, 2022 WL 16948612, at *4 (D.R.I. Nov. 15, 2022) (granting defendant's motion for summary judgment on subsection (c) claim because defendant's debt collection calls incorrectly directed at plaintiff did not constitute telephone solicitations under TCPA); *Condo v. Convergent Outsourcing, Inc.*, No. CV 119-136, 2020 WL 9048632, at *2–3 (S.D. Ga. May 14, 2020) (dismissing plaintiff's subsection (c) claim where defendant incorrectly called plaintiff for debt collection purposes because calls were not telephone solicitations).

Faulk next argues that the real purpose of Firstsource's calls was to sell him the rights to collect Trumble's debt or otherwise induce him to pay the debt. (Doc. No. 95.) Faulk supports this argument in two ways. First, Faulk cites evidence that Firstsource continued to call him even after he notified Dyersburg Health and the Hospital District that they had the incorrect number for Trumble. (*Id.*) Second, Faulk points to Firstsource's prescreening website that is mentioned in the messages and notes that, before a user can access the prescreening questionnaire, they must enter their first and last name, email address, and mobile telephone number and check a box indicating that they have read and agreed to Firstsource's terms and conditions. (Doc. No. 95-6.) The terms and conditions state that, "[b]y accessing the Site and any of its pages, You indicate that You are responsible for an account at one of our healthcare provider clients and Your acknowledgement of and Your agreement to these Terms without limitation or qualification." (Doc. No. 95-7, PageID# 690.) Faulk implies that Firstsource intended that he would assume responsibility for Trumble's debt by providing his contact information and clicking through the website's terms and conditions.

Faulk's evidence is insufficient to create a genuine dispute of material fact that Firstsource's calls were telephone solicitations within the meaning of the TCPA. The record evidence, construed in the light most favorable to Faulk, shows that, after Faulk informed the Hospital District that it had the wrong number for Trumble, Trumble attended another medical appointment, and Faulk's number was again erroneously entered into Faulk's patient profile. Faulk did not attempt to correct the error a second time. Further, even if Firstsource was attempting to induce Faulk to pay Trumble's debt, such calls would constitute debt collection calls, not telephone solicitations. In *Meadows v. Franklin Collection Services, Inc.*, the Eleventh Circuit considered a case in which the plaintiff had received hundreds of calls regarding the debts of her daughter and

the previous owners of her telephone number, even though she told the defendant that it was contacting the wrong person. 414 F. App'x at 232. The plaintiff argued that the defendant's calls were telephone solicitations because they were an implicit attempt to get plaintiff to pay the others' debts. *Id.* at 236. The Eleventh Circuit declined plaintiff's "invitation to stretch and distort the meaning of 'telephone solicitation[,]'" held that the debt-collection "calls were not telephone solicitations, and affirm[ed] the district court's grant of summary judgment" to the defendant on the plaintiff's subsection (c) claim. *Id.* The Court should similarly decline Faulk's invitation to so expand the TCPA.

The defendants have shown that there is no genuine dispute of material fact that the calls and prerecorded messages underlying Faulk's subsection (c) claims are not telephone solicitations within the meaning of the TCPA and that they are entitled to summary judgment on Faulk's subsection (c) TCPA claims. The Court does not need to address the defendants' additional argument regarding the nonprofit exemption to telephone solicitations.[6] *Cf. Wengle v. DialAmerica Mktg., Inc.*, 132 F. Supp. 3d 910, 916–19 (E.D. Mich. 2015) (discussing FCC orders and unpublished district court opinions addressing nonprofit exemption).

### 2. State Law Claims

Count Three of the third amended complaint asserts a harassment claim under Kentucky law. (Doc. No. 60.) Count Four asserts invasion of privacy under Tennessee law. (*Id.*) Faulk states

---

[6] The Court notes, however, that there does not appear to be any genuine dispute that the Hospital District and Dyersburg Health are tax-exempt nonprofit organizations. Among other evidence, the record includes a letter from the Internal Revenue Service confirming the Hospital District's status as an organization "exempt from Federal income tax under section 501(c)(3) of the Internal Revenue Code . . . ." (Doc. No. 81-3, Page# 406.) The record also includes a copy of Dyersburg Health's charter, identifying it as "a non-profit corporation under the Tennessee Nonprofit Corporation Act" and a "not for profit" corporation "under Section 501(c)(3) of the Internal Revenue Code . . . ." (Doc. No. 81-4, PageID# 412.)

that "Kentucky state law applies to the state law claims made in Count Three," "that Count Four was pled in the alternative in case the Court might hold that Tennessee state law applied [to any tort claims raised in a conflict of laws analysis]," and that, "[i]f the [C]ourt holds that Kentucky state law applies, then [Faulk] would voluntarily dismiss the allegations in Count Four." (Doc. No. 95.) The defendants argue that they are entitled to summary judgment on Count Three and Count Four regardless of whether the Court applies Kentucky or Tennessee law. (Doc. No. 81.) Because the Court finds that summary judgment is proper on Faulk's harassment claim under Kentucky law and his invasion of privacy claim under Tennessee law, it does not conduct a further conflict of laws analysis.

### a. Kentucky Harassment Claim

Faulk asserts harassment claims against the defendants under Kentucky Revised Statutes § 446.070 and § 525.070(1)(e). (Doc. No. 60.) Section 525.070(1)(e) is a criminal statute providing that "[a] person is guilty of harassment, when, with intent to intimidate, harass, annoy, or alarm another person, he or she" "[e]ngages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose[.]" Ky. Rev. Stat. Ann. § 525.070(1)(e). Section 446.070 creates a private cause of action for civil damages available to "[a] person injured by the violation of any [Kentucky] statute[,]" including § 525.070. *Id.* § 446.070; *see also Montell v. Diversified Clinical Servs. Inc.*, 969 F. Supp. 2d 798, 806 (E.D. Ky. 2013) (addressing civil damages claim under § 446.070 for harassment in violation of § 525.070), *aff'd in part, rev'd in part on other ground*, 757 F.3d 497 (6th Cir. 2014); *Ricchuite v. Johnson*, No. 1:14-cv-104, 2017 WL 938328, at *11 & n.8 (W.D. Ky. Mar. 9, 2017) (same).

The defendants argue that they are entitled to summary judgment on Faulk's harassment claims because there is no genuine dispute that they did not intend to harass Faulk and the calls were made for a legitimate purpose. (Doc. No. 81.) The defendants point to Savage's sworn

statement that "Firstsource did not intend to intimidate, harass, annoy, or alarm Mr. Faulk" and "did not intend to call Mr. Faulk at all." (Doc. No. 82, PageID# 419, ¶ 15.) They also point to evidence that, when Faulk answered two live calls that the Hospital District made to his phone, the Hospital District representative asked to speak to Trumble, Faulk explained that the representative had the wrong number, and the representative apologized for the mistake and told Faulk that she had removed his number from Trumble's patient profile. (Doc. No. 81-1.) The record also contains undisputed evidence that the prerecorded messages Firstsource left on Faulk's phone were all addressed to Trumble. (Doc. Nos. 86, 95-1.) With respect to purpose, the defendants have also submitted evidence that they were trying to contact Trumble for the legitimate purpose of discussing financial information related to her medical care. (Doc. Nos. 82, 85, 86, 95-1.)

The Court finds that the defendants have carried their initial burden to show that there is no genuine dispute that they did not intend to intimidate, harass, annoy, or alarm Faulk and that the calls were made for the legitimate purpose of contacting Trumble to discuss options for funding her healthcare.

To establish a genuine dispute of material fact, Faulk argues that "[t]he circumstantial evidence of Defendants' knowledge that they had the wrong number combined with Defendants' continued instructions to have Firstsource call that wrong number sufficiently implies an intent to harass or annoy [him] such that a jury must decide" the merits of his harassment claim. (Doc. No. 95, PageID# 629.) Faulk argues that the fact of the continued calls create a genuine question as to their purpose because "they must have had either no legitimate purpose or intended for [Faulk] to satisfy Heather Trumble's debt by paying it off and consequently purchasing the subrogation rights to same." (*Id.* at PageID# 614.) Faulk has not identified any record evidence— aside from the calls themselves—to support his assertion that the defendants instructed Firstsource

to continue calling Faulk despite knowing that his number was not Trumble's. Savage states under penalty of perjury that Firstsource did not intend to call Faulk and did not know that the number it called belonged to him and not Trumble. (Doc. No. 82.)

Construing the record evidence as a whole in the light most favorable to Faulk, the Court finds that Faulk as not shown more than "[t]he mere existence of a scintilla of evidence in support of" his argument that the defendants intended to harass him and that the calls he received served no legitimate purpose. *Anderson*, 477 U.S. at 252. The defendants are therefore entitled to summary judgment on Faulk's harassment claim under Kentucky law. *See Hart v. Commonwealth*, 768 S.W.2d 552, 554 (Ky. Ct. App.1989) ("The offense of harassment requires proof of the . . . fact of *intent to harass, annoy or alarm* another person."); *Ricchuite*, 2017 WL 938328, at *11 ("[T]he statute require[s] that the allegedly harassing actions serve no legitimate purpose.").

### b.      Tennessee Invasion of Privacy Claim

"Tennessee has adopted the common law tort of invasion of privacy" as described in the Restatement (Second) of Torts § 652B, which provides that "'[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.'" *Roberts v. Essex Microtel Assocs., II, L.P.*, 46 S.W.3d 205, 210–11 (Tenn. Ct. App. 2000) (quoting Restatement (Second) of Torts § 652B (Am. Law Inst. 1977)) "[I]n order to recover under this tort, a plaintiff must . . . establish three elements: (1) an intentional intrusion, physical or otherwise, (2) upon the plaintiff's solitude, seclusion or private affairs (3) which would be highly offensive to a reasonable person." *Billiter v. SP Plus Corp.*, 329 F. Supp. 3d 459, 472 (M.D. Tenn. 2018). The defendants argue that they are entitled to summary judgment on Faulk's invasion of privacy claims because they are immune from liability under the

17

TGTLA and, in the alternative, because the record evidence shows that Faulk cannot satisfy the claim's intent requirement. (Doc. No. 81.)

The TGTLA codifies sovereign immunity for governmental entities in Tennessee, including "any municipality, metropolitan government, [or] county . . . ." Tenn. Code Ann. § 29-20-102(3)(A). The statute provides that "governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities" except as otherwise provided in the statute. *Id.* § 29-20-201(a). The TGTLA removes governmental immunity for "injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of" several exceptions, including "invasion of right[s] of privacy[.]" Tenn. Code Ann. § 29-20-205(2). The TGLTA's preservation of governmental immunity for claims arising from "invasion of right[s] of privacy," *id.*, immunizes governmental entities from suits for invasion of privacy. *Fitzgerald v. Hickman Cnty. Gov't*, No. M2017–00565–COA–R3–CV, 2018 WL 1634111, at *5 (Tenn. Ct. App. Apr. 4, 2018) (holding that "claims for invasion of privacy" "clearly fall within the 'intentional tort exception' to the [TGTLA's] immunity waiver"); *see also Iles v. Metro. Gov't of Nashville & Davidson Cnty.*, 500 F. Supp. 3d 711, 716 (M.D. Tenn. 2020) (citing *id.*).

Tennessee courts recognize that hospital districts are governmental entities for purposes of the TGTLA. *See, e.g.*, *Doyle v. Frost*, 49 S.W.3d 853, 855 & n.2 (Tenn. 2001) (holding that Jackson Madison County General Hospital District is a governmental entity immune from suit under the TGTLA). Faulk does not dispute that the Hospital District is immune from the suit under the TGTLA. (Doc. No. 95.) He argues, however, that Dyersburg Health cannot claim immunity under the circumstances of this case.

The Tennessee Supreme Court explained in *Finister v. Humboldt General Hospital, Inc.*, 970 S.W.2d 435 (Tenn. 1998), that the Tennessee General Assembly amended the hospital district "charter legislation" in 1992 to provide that "[*e*]*ach nonprofit corporation of which such hospital district is the sole member, existing when this amendment becomes law or thereafter created, shall be deemed a subsidiary entity of such hospital district created by this act* and shall be a governmental entity for purposes of the Tennessee Governmental Tort Liability Act, Tennessee Code Annotated, Title 29, Chapter 20." 970 S.W.2d at 437 (citation omitted). The record evidence establishes that Dyersburg Health is a non-profit corporation of which the Hospital District is the sole member. (Doc. No. 81-4.) Dyersburg Health is therefore also a governmental entity for the purposes of the TGTLA.

Faulk argues that Dyersburg Health cannot claim TGTLA immunity from his invasion-of-privacy claim because it operates in Dyer County, not Madison County, and is therefore operating outside of the bounds of the Hospital District's authority. (Doc. No. 95.) This argument is unpersuasive. Private hospital authorities like the Hospital District have the authority to "[e]xercise in any other county either within or without" Tennessee "any power that may be exercised in the county" of their primary location. Tenn. Code Ann. § 7-57-502(b)(9) (providing these powers to metropolitan hospital authorities); *see also id.* § 7-57-603 (extending the powers of metropolitan hospital authorities to non-metropolitan private act authorities, including the Hospital District). Thus, the Hospital District has the authority to own and operate a non-profit corporation in its primary county, Madison County, and the authority to own and operate a non-profit corporation outside of its primary county. The Hospital District is not acting outside of its authority by owning and operating Dyersburg Health in Dyer County, and Dyersburg Health is still a governmental entity for the purposes of the TGTLA.

19

Faulk next argues that, because Faulk lives in Kentucky and the defendants used Firstsource, a Kentucky company, to place the subject calls, the defendants' TGTLA immunity does not extend to Faulk's invasion-of-privacy claims. (Doc. No. 95.) However, "States' immunity from suits in federal court applies to claims against a State by citizens of the same State as well as to claims against a State by citizens of another State." *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005). Further, Dyersburg Health and the Hospital District are the entities subject to immunity, not Firstsource; Firstsource's status as a Kentucky corporation is not relevant. There is no genuine dispute of fact that Dyersburg Health and the Hospital District are immune from Faulk's Tennessee invasion-of-privacy claim.

Because the defendants have shown that summary judgment in their favor is appropriate as to Faulk's TCPA subsection (c) claims and state law claims, the Magistrate Judge will recommend that the Court grant their motion for partial summary judgment.

### B. Faulk's Motion for Partial Summary Judgment on His TCPA Subsection (b) Claims

Faulk argues that he is entitled to summary judgment on his TCPA subsection (b) claims because there is no genuine dispute of material fact that Firstsource violated subsection (b) by repeatedly calling Faulk without his permission and that the Hospital District should be liable for treble damages for these calls. (Doc. No. 87-1.) The defendants respond that they are not vicariously viable for Firstsource's calls because Firstsource was an independent contractor of the Hospital District, not its agent. (Doc. No. 89.)

Section 227(b)(1)(A) of the TCPA makes it unlawful for any person within the United States

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . .

47 U.S.C. § 227(b)(1)(A)(iii). The TCPA creates a private right of action for violation of this provision. *Id.* § 227(b)(3); *see also Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167–68 (2021). "A plaintiff establishes a claim for violation of this provision if [ ]he shows that the defendant (1) placed a call to a cellular or wireless telephone number (2) using any automatic dialing system and/or a prerecorded or artificial voice, (3) without the plaintiff's consent." *Stewart v. Healthcare Revenue Recovery Grp.*, No. 3:20-cv-00679, 2022 WL 200371, at *11 (M.D. Tenn. Jan. 21, 2022). A plaintiff can recover damages under the TCPA under a theory of direct or vicarious liability, *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 371 (6th Cir. 2015), and may recover treble damages if the defendant willingly or knowingly violated subsection (b), 47 U.S.C. § 227(b)(3).

A plaintiff can hold a defendant vicariously liable for TCPA violations "under common-law theories of actual authority, apparent authority, or ratification." *Keating*, 615 F. App'x at 371. "A [defendant]'s liability for the activities of a third-party robo-caller must . . . be tied into some identifiable agency principle—there is no strict liability merely because the unlawful calls were made 'on behalf of' the [defendant]." *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1198 (M.D. Tenn. 2017). Faulk argues that Firstsource's actions are imputed to the Hospital District because "Firstsource was contract by [the Hospital District] to make calls to [the Hospital District's] subsidiaries' patients as directed by [the Hospital District]. This contract establishes the principal-agent relationship on which [the Hospital District's] vicarious liability is based." (Doc. No. 87-1.)

Faulk cites the Master Service Agreement between the Hospital District and Firstsource in support of this theory of vicarious liability. In the Master Service Agreement, Firstsource agrees to provide "healthcare accounts receivables management and extended business office services, including but not limited to, billing, eligibility and enrollment services" to the Hospital District.

(Doc. No. 87-7.) But, as the Hospital District points out, Paragraph Five of the agreement contains an independent contractor provision which states that Firstsource "is an independent contractor to" the Hospital District and that nothing in the agreement "shall create or be deemed to create an . . . agency . . . relationship between" the parties. (*Id.*)

Courts have found that formal contracts stating that the alleged agent is an independent contractor, not an agent, indicate that there is not a formal agency relationship between those parties. *See, e.g.*, *id.* at 372 (finding no actual authority when contractual language stated that parties to agreement were "'independent contractors'" and that alleged agent had "'no authority to make or accept any offers or representations'" (citation omitted)); *Black v. SunPath Ltd.*, No. 3:21-cv-00023, 2022 WL 4241270, at *4 (M.D. Tenn. Sept. 14, 2022) (finding that contract stating that alleged agent was independent contractor and not agent, without additional evidence, weighed against a finding of actual authority), *appeal dismissed*, No. 22-5927, 2022 WL 18304462 (6th Cir. Dec. 27, 2022). At the very least, a genuine issue of material fact exists as to whether Firstsource acted as the Hospital District's agent in making calls to Faulk based on the Master Services Agreement. Because Faulk argues no other source of Firstsource's authority, he has not shown that summary judgment in his favor is appropriate on his subsection (b) claim.[7]

---

[7] In his reply brief, Faulk cites the Sixth Circuit's decision in *Lucas v. Telemarketer Calling from (407) 476-476-5680*, No. 18-3633, 2019 U.S. App. LEXIS 32923, at *13–16 (6th Cir. Nov. 1, 2019), granting a petition for rehearing en banc, vacating the district court's decision, and remanding for further proceedings in light of a declaratory ruling and order by the Federal Communications Commission (FCC), *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 (2015). In that ruling, the FCC "account[ed] for changes in calling technology that inure to the benefit of consumers while fulfilling the intent of Congress to prohibit nuisance calls that cause frustration and harm." *Id.* at Para. 29. Specifically, the FCC addressed what could constitute a "direct connection between a person or entity and the making of a call" and determined that it would "look to the totality of the facts and circumstances surrounding the placing of a particular call to determine: 1) who took the steps necessary to physically place the call; and 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it, considering the goals and purposes of the TCPA." *Id.* at

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Dyersburg Health and the Hospital District's motion for partial summary judgment on Faulk's TCPA subsection (c) and state law claims (Doc. No. 80) be GRANTED and that Faulk's motion for partial summary judgment on his TCPA subsection (b) claims (Doc. No. 87) be DENIED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 14th day of August, 2023.

ALISTAIR E. NEWBERN
United States Magistrate Judge

---

Para. 30. But Faulk argues that the Court should apply this totality of the circumstances standard only in his reply brief, and arguments made for the first time in reply briefs are generally considered to be waived. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). The Court should not consider the application of this standard in resolving Faulk's motion for partial summary judgment.