IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JEREMY FAULK, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KNOXVILLE HMA HOLDING, LLC et ) <br> al., ) <br> ) <br> Defendants. ) | No. 3:21-cv-00755 <br><br> JUDGE RICHARDSON |

### Memorandum Opinion and Order

Pending before the Court[1] are the parties' motions for summary judgment (Doc. Nos. 80, 87). Jeremy Faulk ("Plaintiff"), proceeding pro se,[2] brought suit[3] under subsections (b) and (c) of the Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C. § 227, and state law to challenge telephone calls that he received that were made on behalf of Defendants Jackson

---

[1] Herein, generally "the Court" refers to the undersigned district judge, as distinguished from the Magistrate Judge who issued the R&R.

[2] The liberal treatment of pro se pleadings "does not require lenient treatment of substantive law" and does not "apply after a case has progressed to the summary judgment stage." *See Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at * 3 (6th Cir. May 5, 2010). Nonetheless, where Plaintiff's objections can be fairly construed as objecting to a portion of the Magistrate Judge's report and recommendation, even if the objection does not identify the portion via citation to page numbers and paragraphs, the Court will treat the objection as procedurally proper. However, where any of Plaintiff's objections lack the specificity required under Local Rule 72.02, the Court must hold Plaintiff accountable for lack of compliance with this district's local rules, despite his *pro se* status.

[3] Plaintiff filed his original Complaint (Doc. No. 1) on October 1, 2021 before filing three amended complaints. (Doc. Nos. 7, 41, 60). The operative complaint for purposes of the Court's ruling is Plaintiff's Third Amended Complaint. (Doc. No. 60).

Madison County General Hospital District ("JMCGHD") and Dyersburg Health (collectively, "Defendants").[4] (Doc. No. 60).

Defendants have filed a motion for partial summary judgment, (Doc. No. 80, "Defendants' Motion"), wherein they seek summary judgment specifically on Plaintiff's TCPA subsection (c) and state law claims. Plaintiff has responded in opposition to Defendants' Motion, (Doc. No. 95), and Defendants have replied. (Doc. No. 97). For his part, Plaintiff has filed a motion for partial summary judgment (Doc. No. 87, "Plaintiff's Motion"), wherein he seeks summary judgment specifically on his TCPA subsection (b) claims. Defendants have responded in opposition, (Doc. No. 89), and Plaintiff has filed a reply (Doc. No. 98).

The Magistrate Judge issued a Report and Recommendation (Doc. No. 100, "R&R") on August 14, 2023, in which she recommended that Defendants' Motion be granted and that Plaintiff's Motion be denied. Plaintiff filed objections to the R&R (Doc. No. 101), and Defendants filed a response to Plaintiff's objections. (Doc. No. 102). Plaintiff then filed a reply to Defendants' response. (Doc. No. 103).

## PLAINTIFF'S CLAIMS

In the Third Amended Complaint, Plaintiff asserts several claims against Defendants, including: (1) violation of the Telephone Consumer Protection Act of 1991 (TCPA) 47 U.S.C. § 227 subsection (b) (Count One), (2) violation of the TCPA, subsection (c) (Count Two), (3)

---

[4] The Jackson Madison County General Hospital District owns and operates Dyersburg Health. (Doc. No. 85). In his response to Defendants' Motion Plaintiff uses the plural, "Defendants," appearing to refer to both Jackson Madison County General Hospital District ("JMCGHD") and Dyersburg Health. But in Plaintiff's Motion, he uses the singular, "Defendant," apparently referring only to Defendant JMCGHD—this despite the fact that that Plaintiff's Motion is directly exclusively at Count One, in which he alleges that "Defendants" violated 47 U.S.C. 227(b)(1)(A)(iii). (*See* Doc. No. 60 at ¶ 25). To remain consistent with Plaintiff's approach, the Court refers to "Defendants" (plural) in the Background section and in addressing Defendants' Motion, but refers only to "JMCGHD" in addressing Plaintiff's Motion (while remaining fully aware that Count One is asserted against both Defendants).

harassment under Kentucky Revised Statute § 525.070 (Count Three), and (4) invasion of privacy under Tennessee common law (Count Four). Only Counts One and Three are at issue for purposes of Plaintiff's objections to the Report and Recommendation's.[5]

BACKGROUND[6]

The R&R adequately states the allegations, undisputed facts, and respective positions of the parties. However, the Court will provide a brief overview here, largely (though not exclusively) by citing to the R&R (Doc. No. 100).

On March 11, 2021, non-party Heather Trumble ("Ms. Trumble") attended a medical appointment at Dyersburg Hospital. (*Id.* at. 2). When registering her for her appointment, the hospital's registration clerk incorrectly entered Plaintiff's phone number into Ms. Trumble's account. (*Id.*)[7]

Plaintiff alleges that during the week of March 8, 2021 and March 17, 2021, he received voicemails of prerecorded messages from Dyersburg Hospital that were intended for Ms. Trumble.[8] (Doc. No. 100 at 2.) In fact, these calls were placed by Firstsource Solutions, USA, LLC ("Firstsource"), a company with which Defendants contracted; according to Defendants, Firstsource was contracted to contact patients like Ms. Trumble who lack health insurance to offer

---

[5] Plaintiff filed objections only as to Counts One and Three and stated in his objections that he would not argue in further support of Counts Two and Four. (Doc. No. 101 at 1). Therefore, the Court will treat as unopposed the Magistrate Judge's treatment of Counts Two and Four and will adopt the Report and Recommendation as to those Counts without further analysis as a district court is not required to review, under a de novo or any other standard, those aspects of the report and recommendation to which no objection is made. *Ashraf v. Adventist Health System/Sunbelt, Inc.*, 322 F. Supp. 3d 879, 881 (W.D. Tenn. 2018); *Benson v. Walden Security*, No. 3:18-cv-0010, 2018 WL 6322332, at *3 (M.D. Tenn. Dec. 4, 2018).

[6] Unless indicated otherwise (as for example when particular facts are identified as being merely asserted by a party or otherwise qualified in some manner), the facts set forth in this section are undisputed.

[7] Plaintiff's phone number is 731-445-2372; Ms. Trumble's is 731-445-2732.

[8] Defendants state that Firstsource did not first call Plaintiff until March 18, 2021. (Doc. No. 82, 87-1).

to assist them in obtaining government insurance or charitable assistance for their medical bills. (*Id*. at 3). According to certain language in Defendants' contract with Firstsource, a copy of which was filed by Defendants, (Doc. No. 87-7), Defendants hired Firstsource as an independent contractor. (Doc. No. 100 at 3.) While Plaintiff asserts that Firstsource acts as a debt collector for Defendants, Defendants deny this on the grounds that "Firstsource does not sell health insurance or any other product or service to patients" and "does not request or accept any payments from patients." (*Id*.) The parties agree that the voicemails left by Firstsource state that Firstsource is calling "to determine if you qualify for financial assistance programs" which is "a complimentary service provided free of charge to you by the hospital." (*Id*.)

On March 17, 2021, Plaintiff contacted Defendants by placing calls to the Jackson-Madison County General Hospital operator line and nursing station on Floor B8 and told representatives of Defendants that Ms. Trumble could not be reached at Plaintiff's phone number. (Doc. Nos. 81-1 at 39-44, 87-5, 87-8). The representative told Plaintiff that she would "get [Ms. Trumble's contact information] pulled up" and "get [the number] changed" and "that they would take care of it and stop the calls . . . ." (Doc. No. 100 at 3). Nevertheless, even after this, Plaintiff continued to receive telephone messages intended for Ms. Trumble. (*Id*.)

Then, on June 22, 2021, Plaintiff received a live call from a representative of Defendants seeking to reach Ms. Trumble. (*Id*.) Plaintiff answered and told the representative that Ms. Trumble could not be reached at his number and hung up. (*Id*. at 3-4). The representative called Plaintiff back minutes later, apologizing for the mistake and telling Plaintiff that she had removed his number from Ms. Trumble's account and that he should not continue to receive calls. (*Id*. at 4).

On June 27, 2021, Ms. Trumble visited Dyersburg Hospital again, and the registration clerk again entered Plaintiff's telephone number as Ms. Trumble's number. (Doc. No. 84). Plaintiff

received another prerecorded message on July 1, 2021 and continued to receive these messages weekly for several weeks. (*Id*.) Plaintiff did not answer these calls, nor did he contact Defendants regarding their continuation. (*Id*.) The calls to Plaintiff ended during the week of September 20, 2021. (*Id*.)

Plaintiff filed this lawsuit suit on October 1, 2021. (Doc. No. 1). On December 7, 2022, Defendants filed Defendants' Motion, seeking summary judgment specifically on Plaintiff's claims for violation of TCPA subsection (c) (Count Two), harassment under KRS § 525.070 (Count Three), and invasion of privacy (Count Four). Plaintiff then filed Plaintiff's Motion, seeking summary judgment on his claim under TCPA subsection (b) (Count One).

In the R&R, the Magistrate Judge reviewed the parties' arguments and recommended that the Court grant Defendants' Motion and deny Plaintiff's Motion. (Doc. No. 100). Plaintiff filed timely objections to the R&R (Doc. No. 101) and Defendants filed a response to Plaintiff's objections. (Doc. No. 102).

## LEGAL STANDARD

**i.     Fed. R. Civ. P. 72(b)(3)**

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial matter, the district court must review *de novo* any portion of the report and recommendation to which a proper objection is made. Fed. R. Civ. P. 72(b)(3). "Parties cannot 'raise at the district court stage new arguments or issues that were not presented' *before* the magistrate judge's final R&R." *See Meddaugh v. Gateway Financial Service*, 601 F. Supp. 3d 210, 213 (E.D. Mich. 2022) (quoting *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000)).

The district judge may accept, reject, or modify the recommended disposition, review further evidence, or return the matter to the magistrate judge with instructions. *Id.* Fed. R. Civ. P.

72(b)(2) provides that a party may file "specific written objections" to a report and recommendation, and Local Rule 72.02(a) provides that such objections must be written and must state with particularity the specific portions of the Magistrate Judge's report or proposed findings or recommendations to which an objection is made. Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(3), the Court has reviewed the Report and Recommendation, the Objections, and the file. For the reasons stated herein, the Court overrules Plaintiff's objections and adopts and approves the Report and Recommendation. Therefore, Defendants' Motion (Doc. No. 80) is granted and Plaintiff's Motion (Doc. No. 87) is denied.

### ii. Fed. R. Civ. P. 56(c)

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Reeves v. Swift Transp. Co.*, 446 F.3d 637, 640 (6th Cir. 2006) (citing *Anderson*, 477 U.S. at 248), *abrogated on other grounds by Young v. Utd. Parcel Serv.*, 575 U.S. 206 (2015). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634–35 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts.

*Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627–28 (6th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Alternatively, the moving party may meet its initial burden by otherwise "show[ing]"—even without citing materials of record—that the nonmovant "cannot produce admissible evidence to support a material fact (for example, the existence of an element of a nonmovant plaintiff's claim)." Fed. R. Civ. P. 56(c)(1)(B). If the summary judgment movant meets its initial burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Pittman*, 901 F.3d at 628.[9] Importantly, "[s]ummary judgment for a defendant [that has met its initial burden as the movant] is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial.'" *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 805–06 (1999) (quoting *Celotex,* 477 U.S. at 322).

Any party asserting that a fact cannot be or genuinely is disputed (*i.e.*, any party seeking summary judgment and any party opposing summary judgment, respectively) can support the assertion either by: (a) citing to materials in the record, including, but not limited to, depositions, documents, affidavits, or declarations, Fed. R. Civ. P. 56(c)(1)(A), or (b) "showing" (i) that the adverse party cannot produce admissible evidence to raise a genuine dispute as to that fact or (ii) that contrary to the claim of the adverse party, the materials cited by the adverse party do not actually establish the absence or presence (as the case may be) of a genuine dispute as to that fact.

In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. "[A]t the

---

[9] Courts (appropriately) at times refer interchangeably to a party being able to raise a genuine issue as to a fact and a reasonable jury being able to find in the party's favor on that fact, and this Court does likewise.

summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 242-43. The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 252-53. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

DISCUSSION

### I. Defendants' Motion for Partial Summary Judgment on KRS § 525.070(1)(e) (Count Three)[10]

Kentucky Revised Statute § 525.070(1)(e) is a criminal statute providing that "[a] person is guilty of harassment, when, with intent to intimidate, harass, annoy, or alarm another person, he or she" "[e]ngages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose[.]" Section 446.070 creates a private cause of action for civil damages available to "[a] person injured by the violation of any [Kentucky] statute[,]" including § 525.070. Ky. Rev. Stat. Ann. § 446.070; *see also Montell v. Diversified Clinical Servs. Inc.*, 969 F. Supp. 2d 798, 806 (E.D. Ky. 2013) (addressing civil damages claim under § 446.070 for harassment in violation of § 525.070), *aff'd in part, rev'd in part on other grounds*, 757 F.3d 497 (6th Cir. 2014).

Two elements of a violation of KRS § 525.070(1)(e) are pertinent here: first, that Defendants intended to "intimidate, harass, annoy, or alarm" Plaintiff; and second, that the calls

---

[10] As noted above, Plaintiff stated in his objections that he would not argue in further support of Counts Two and Four. (Doc. No. 101 at 1). Therefore, the Court will treat as unopposed the Magistrate Judge's treatment of Counts Two and Four and will adopt the Report and Recommendation as to those Counts without further analysis.

to Plaintiff served a "legitimate purpose." To succeed at the summary judgment stage, the movant (here, Defendants) "bears the initial burden of showing the absence of a genuine dispute of material fact as to at least one essential element of the non-movant's [(Plaintiff's)] claim." *Celotex Corp. v. Catrett*, 477 U.S. at 323. Defendants claim that there is no genuine dispute that the aforementioned elements are absent here, i.e., no genuine dispute that (1) Defendants did not intend to harass or annoy Plaintiff, and (2) the calls were made with a legitimate purpose. The existence of these two (supposed) facts is plainly material because if either exists, Plaintiff's claim fails. Thus, the Court must determine whether there is indeed, as Defendants claim, no genuine dispute as to the existence of at least one of these facts, in which case the claim fails.

Defendants point to several items in the record to support their position that Defendants lacked intent to harass or annoy Plaintiff. First, Defendants highlight a sworn declaration from Rachel Savage, the Regional Vice President of Eligibility and Enrollment at Firstsource, in which Savage insists that Firstsource never intended to harass, annoy, or alarm Plaintiff.[11] (Doc. No. 82

---

[11] The Court is not persuaded by Plaintiff's arguments that Rachel Savage's declaration should be excluded from the summary judgment record for lack of personal knowledge. As the R&R correctly concluded, Savage's personal knowledge is properly based on her role as a corporate officer and a review of Firstsource's business records. *See Findlay Indus., Inc. v. Bohanon*, No. 3:07- cv-1210, 2007 WL 2669191, at *4 (N.D. Ohio Aug. 14, 2007) (alteration omitted) (quoting *AGI Realty Serv. Grp., Inc. v. Red Robin Int'l, Inc.*, No. 94-3911, 1996 WL 143465, at *4 (6th Cir. Mar. 28, 1996)).

Moreover, although Plaintiff cites specific issues it has with Savage's declaration, Plaintiff fails to specify the precise finding the Magistrate Judge made (allegedly in error) in reliance on Savage's declaration. This violates Fed. R. Civ. P. 72(b)(2) and Local Rule 72.02(a), the latter of which provides that such objections must be written and must state with particularity the specific portions of the Magistrate Judge's report or proposed findings or recommendations to which an objection is made. "[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings ... believed [to be] in error" are too general." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006) (quoting *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)). Thus, the Court ought not consider these generalized objections.

Finally, even if the Court were to consider Plaintiffs objections regarding Savage's declaration, they are inapposite. For example, Plaintiff challenges the veracity of Savage's statement that all voicemails left on Plaintiff's phone followed the same script, claiming that actually two different scripts were used. (Doc. No. 101 at 3). But whether one or two scripts were used would not affect the Magistrate Judge's (or this Court's)

at ¶ 15). Nor did Firstsource ever intend to even contact call Plaintiff, according to Savage. (*Id*. at ¶ 13). Next, Defendants point to the undisputed fact that the representative that spoke to Plaintiff on June 22, 2021 apologized for mistakenly calling the wrong number and told Plaintiff that she would remove his number from Ms. Trumble's account. (Doc. No. 95-1 at ¶ 9). Defendants also point to the fact that Firstsource, the party making the calls, does not advertise or sell any products (Doc. No. 82) and thus would not have any incentive to continue contacting Plaintiff in light of knowledge that it had incorrect number.

As to legitimate purpose, Defendants assert that at all times their purpose for contacting Plaintiff was to reach Ms. Trumble to discuss finances related to her medical care. To support this assertion, Defendants highlight that all voicemails clearly stated the reason for the call and were addressed to Ms. Trumble. (Doc. Nos. 86, 95-1 at ¶ 26). Defendants point again to Savage's declaration stating that Firstsource intended to contact Ms. Trumble to assist her in applying for government medical benefits, if she desired to so apply. (Doc. No. 82 at ¶ 15).

Defendants have met their initial burden on summary judgment by successfully identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman,* 901 F.3d at 627–28. Therefore, the burden now shifts to the non-moving party (Plaintiff) to set forth specific facts showing that there is a genuine issue for trial as to whether (1) Defendants intended to harass or annoy Plaintiff and (2) Defendants had no legitimate purpose for continuously calling Plaintiff. *Id.* at 628. In an effort to meet his burden, Plaintiff points to record

---

decision. The R&R relies on the voicemail script only to establish that the caller always addressed Plaintiff by "Ms. Trumble" and stated the reason for the call. Both transcripts that Plaintiff purports were used, which are nearly identical, include this information. (Doc. No. 95-1). Similarly, Plaintiff disputes that a call was made to Plaintiff on September 15, 2021 as claimed by Savage. (Doc. No. 101 at 3). However, this dispute would be relevant, if at all, only when calculating damages, a step that neither the R&R nor this Court finds necessary to consider for purposes of the instant motion.

evidence showing that on March 17, 2021[12] Plaintiff spoke with two employees[13] of Defendants and informed them that Ms. Trumble could not be reached at the number they were calling. (Doc. No. 87-2 at ¶¶ 1-2). Plaintiff then reasons as follows: Two of Defendants' employees had knowledge, from Plaintiff's March 17, 2021 call, that the wrong number was on file, and that knowledge can be imputed from Defendants' two employees to Defendants.[14] Then, argues Plaintiff, from Defendants' continued calls, made in light of this knowledge, a jury could reasonably infer that (1) Defendants intended to harass or annoy Plaintiff and (2) Defendants had no legitimate purpose for continuing to call (after all, how could Defendants claim they was calling to speak to Ms. Trumble if it knew Ms. Trumble could not be reached at that number?).

If Defendants had in fact made these calls, this may be a reasonable argument. But Defendants did not make the calls at issue. Instead, these calls were made by Defendants' third-

---

[12] Plaintiff asserts that he informed Defendants about the error a second time on June 22, 2021 when he answered a live call from a representative of Defendants and informed the representative that they had the wrong number. However, this second instance is undoubtedly insufficient to create a genuine issue of material fact given the undisputed fact that Ms. Trumble's phone number was incorrectly entered again just a few days later at her June 27, 2021 appointment. (Doc. No 95-1 at ¶¶ 14-17). Plaintiff did not contact Defendants after June 27, 2021, and the record reflects no evidence that Defendants otherwise learned of this mistake from someone other than Plaintiff. Thus, there is insufficient evidence from which a jury could reasonably conclude that Defendants would have had knowledge of incorrect information after this point. Therefore, for purposes of evaluating the harassment claim, the Court considers only calls made between March 17, 2021 and June 27, 2021.

[13] Although Defendants have not yet identified the exact party that Plaintiff spoke to on this call, Verizon phone records confirm that calls were placed to the Jackson-Madison County General Hospital operator and a nursing station on Floor B8. (Doc. No. 87-8 at ¶ 1-2).

[14] The Court wishes to clarify that it does not take issue with Plaintiff's legal argument that a jury should decide whether knowledge can be imputed to a defendant through its agent or employee. Indeed, there is legal support for this position. *See e.g., Sims v. Health Midwest Physician Servs. Corp.*, 196 F.3d 915, 921 (8th Cir. 1999) (reversing the District Court's grant of summary judgment on [plaintiff's] vicarious-liability claim because there were "genuine issues of fact regarding [an employee's] role and whether her knowledge of harassment can be imputed to [Defendant]"; *Flores v. JBM Janitorial Maint., Inc.,* No. 4:18-CV-1263, 2019 WL 6886866, at *4 (S.D. Tex. Oct. 23, 2019) (concluding, based on the record available, that there was "a genuine issue of fact as to whether [employee's] knowledge may be imputed to [Defendant]." ). But here, as explained below, even if Plaintiff *could* satisfy a jury that Defendants had such (imputed) knowledge, a jury still could not reasonably find that Defendants intended to harass or annoy Plaintiff or called without a legitimate purpose based on the record.

party contractor, Firstsource, which did not have any knowledge that the wrong number was on file, so far as the record shows. Plaintiff's argument therefore would require reverse-imputing Defendants' knowledge (which would have already been imputed to Defendants through two of their employees) back to Firstsource despite its lack of knowledge.[15]

In other words, under Plaintiff's reasoning, a jury would need to impute knowledge from Defendants' two employees to Defendants, then back to Defendants' third-party contractor who actually made the calls. And from there, the jury would still have to infer, from the fact that Firstsource made the calls with (reverse-imputed) knowledge that they were being made to the wrong person, intent to harass or annoy and lack of a legitimate purpose *on the part of Defendants*. The Court is unpersuaded that a jury reasonably could either make that imputation or draw that inference based on the record evidence, and it thus finds that Plaintiff has failed to carry his burden.

To summarize, even if Plaintiff could show that Defendants knew that they had the wrong number on file for Ms. Trumble as of March 17, 2021 (by imputing that knowledge to Defendants from their employee), that does not mean that a jury could reasonably find based on the instant record that Defendants intended to harass or annoy Plaintiff or called without a legitimate purpose. Thus, the Court finds the evidence as to Defendants' intent and purpose for directing calls to Plaintiff so one-sided in Defendants' favor that Plaintiff cannot demonstrate that the dispute is

---

[15] Plaintiff sets forth no factual or legal basis for imputing Defendants' knowledge to Firstsource. Among other things, Plaintiff does not establish that the mere fact that Firstsource was a contractor of Defendants means that Defendants' knowledge is imputed to Firstsource.

genuine. The Court adopts the Magistrates Judge's Recommendation and grants Defendants' motion for summary judgment on Count Three.[16]

## II. Plaintiff's Motion for Summary Judgment on TCPA Subsection (b) (Count One)

As noted above, via Plaintiff's Motion, Plaintiff seeks summary judgment as to Count One. To establish a claim under TCPA subsection (b) (Count One), a plaintiff must prove that a defendant: "(1) placed a call to a cellular or wireless telephone number (2) using any automatic dialing system and/or a prerecorded or artificial voice, (3) without the plaintiff's consent." *Stewart v. Healthcare Revenue Recovery Grp.*, No. 3:20-cv-00679, 2022 WL 200371, at *11 (M.D. Tenn. Jan. 21, 2022). A plaintiff can recover damages under the TCPA under a theory of direct or vicarious liability. *Keating v. Peterson's Nelnet*, LLC, 615 F. App'x 365, 371 (6th Cir. 2015). Moreover, damages may be trebled if the defendant willingly or knowingly violated subsection (b). 47 U.S.C. § 227(b)(3).

As the moving party, Plaintiff has the initial burden of proving that no genuine issues of material fact exist. *Celotex,* 477 U.S. at 323. Plaintiff claims he is entitled to summary judgment on his TCPA subsection (b) claim because no genuine issue of material fact exists that Firstsource is an agent of Defendant JMCGHD and that Firstsource called Plaintiff using prerecorded messages without Plaintiff's consent. (Doc. No. 87-1). Plaintiff also argues that JMCGHD is liable for treble damages because no genuine issue of material fact exists that Firstsource acted knowingly. (Doc. No. 87-1). Thus, the Court must determine whether there is indeed, as Plaintiff

---

[16] As noted above, Plaintiff stated in his objections that he would not argue in further support of Counts Two and Four after the R&R recommended granting Defendants' motion for summary judgment on those counts. (Doc. No. 101 at 1). Therefore, the Court will treat as unopposed the Magistrate Judge's recommendation on Counts Two and Four and, in addition to Count Three, will adopt the Report and Recommendation as to those Counts without further analysis.

claims, no genuine dispute about these facts, in which case Plaintiff is entitled to summary judgment on his TCPA subsection (b) claim.

There is no dispute among the parties that Firstsource called Plaintiff using prerecorded messages without Plaintiff's consent. (Doc. No. 87-8 at ¶ 13). However, whether Firstsource is an agent of JMCGHD such that JMCGHD can be held vicariously liable for Firstsource's conduct is a separate issue, and one that the Court now considers. As evidence that Firstsource acted as JMCGHD's agent, Plaintiff initially pointed to JMCGHD's contract with Firstsource ("Master Services Agreement"). In the Master Services Agreement, Firstsource promised to provide JMCGHD "healthcare accounts receivables management and extended business office services, including but not limited to, billing, eligibility, and enrollment services." (Doc. No. 87-7). In response, JMCGHD highlighted Paragraph 5 of the Master Services Agreement, which contains an independent-contractor provision clearly stating that Firstsource is "an independent contractor to" JMCGHD and that nothing in the agreement "shall create or be deemed to create an . . . agency . . . relationship between" the parties. (Doc. No. 87-7). As the R&R correctly observes, courts have found that language similar to this is sufficient to indicate a lack of formal agency relationship between the parties.[17] Therefore, the Court finds there is at least a genuine issue of fact as to whether Firstsource acted as JMCGHD's agent in calling Plaintiff.

This finding is consistent with that of other courts which have consistently found that "[t]he existence of an agency relationship is generally a factual question" which "will require the

---

[17] The Court realizes that, as explained by one district court, the "existence of an independent contractor agreement is not necessarily dispositive" on the question of independent-contractor status and that courts must "inquire as to the real nature of the relationship and the degree of control exercised." *Henderson v. Atmos Energy,* 509 F. Supp. 3d 625, 634 (E.D. La. 2020) (*citing Arroyo v. E. Jefferson Gen. Hosp.*, 956 So. 2d 661, 664 (La. App. 5 Cir. 2007)), *aff'd sub nom. Henderson v. Atmos Energy Corp.*, No. 21-30046, 2022 WL 3657191 (5th Cir. Aug. 25, 2022). The Court agrees that the language in the independent-contractor

weighing of evidence and the evaluation of credibility, tasks not appropriate for summary judgment." *Hagan v. Phipps*, No. M2010–00002–COA–R3–CV, 2010 WL 3852310, at *5 (Tenn. Ct. App. Sept.28, 2010) (citation omitted); *see also Tan v. Wilbur Smith Assocs., Inc.*, No. 2:09-CV-25, 2011 WL 3421320, at *6 (E.D. Tenn. Aug. 4, 2011) (concluding that "the existence of an agency relationship is a genuine issue of material fact for the jury as factfinder, such that summary judgment . . . is inappropriate."). More specific to the issue at hand, courts have concluded that where a genuine dispute exists as to whether a relationship is an agency relationship or an independent contractor relationship, the issue is for the jury. *See Bertram v. Progressive Se. Ins. Co.*, No. 2:19-CV-01478, 2023 WL 417438 (W.D. La. Jan. 25, 2023) (finding on motion for summary judgment that the plaintiffs submitted sufficient evidence to create an issue of material fact for trial as to whether or not a principal/agency relationship existed between the defendant and a third party).

In his objections, Plaintiff argues that the R&R takes too narrow a view of the word "agent" and urges the Court to apply the totality of the circumstances approach used in *Lucas v. Telemarketer Calling from (407) 476-5680 & Other Tel. Nos.*, 2019 U.S. App. LEXIS 32923 (6th Cir. Nov. 1, 2019). But, as the R&R emphasizes, Plaintiff did not raise this totality of the circumstances argument until his reply brief. "Generally speaking, arguments raised for the first time in reply briefs are waived, and this applies both on appeal and to summary judgment motions filed in the trial court." *Palazzo v. Harvey*, 380 F. Supp. 3d 723, 730 (M.D. Tenn. 2019). This is not a hard and fast rule. The Court realizes that some arguments are appropriately considered even if first raised in the movant's reply. "Specifically, such an argument can (and should) be considered

---

provision of the Master Services Agreement is not dispositive. However, the Court appropriately considers it sufficient to at least raise a question of genuine fact as to the existence of an agency relationship on a motion for summary judgment.

if it was raised in the non-movant's response to the motion, regarding an issue that the movant in all fairness should not have been expected to raise in its initial brief (since, after all, a movant is not required, and generally is not allowed sufficient briefing pages, to make a pre-emptive argument against every single point that might be made in the non-movant's response)". *Archambeault v. Wyndham Vacation Ownership, Inc*., No. 3:20-CV-01044, at *5, n. 14, 2021 WL 6496827 (M.D. Tenn. July 14, 2021). But Plaintiff's totality of the circumstances argument is not an argument that falls within the exception to this rule.

Nowhere in his initial briefing does Plaintiff advocate for the totality of the circumstances approach adopted in *Lucas*. Instead, in his motion for summary judgment on Count One, Plaintiff initially relies on general common-law principles of agency liability and specifically highlights JMCGHD's contract with Firstsource to support its claim of an agency relationship. *See* Doc. No. 87-1 at 10 ("This contract establishes the principal-agent relationship on which [JMCGHD's] vicariously [sic] liability is based." Only after JMCGHD counters this argument in its Response brief (Doc. No. 89 at 10-11) by pointing to the independent-contractor provision does Plaintiff pivot to the totality of the circumstances argument. Plaintiff, in relying on the rather straightforward contract in his initial briefing, certainly could have reasonably anticipated this response by JMCGHD and addressed it in his initial argument. Instead, he did not raise the totality-

of-the-circumstances argument to negate the significance of the independent-contractor provision until his reply brief. Thus, the Court agrees with the R&R that Plaintiff has waived this argument.[18]

Accordingly, the Court accepts and adopts the R&R's decision to deny Plaintiff's Motion, i.e., his motion for summary judgment on Count One.[19]

CONCLUSION

For the reasons discussed herein, Plaintiff's objections are overruled, and the Court adopts the Magistrate Judge's Report and Recommendation. (Doc. No. 100). Accordingly, Defendants' Motion (Doc. No. 80) is **GRANTED**, and Plaintiff's Motion (Doc. No. 87) is **DENIED**.

Accordingly, Counts Two through Four are dismissed. Count One remains pending.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[18] The Court also notes that "totality of the circumstances" tests tend to be subjective and, as a result, their outcomes are generally easily subject to genuine dispute. Furthermore, even if the Court were to consider Plaintiff's argument under *Lucas*, it would still be insufficient for the Court to grant his motion for summary judgment. The relevant decisions embracing the "totality of the circumstances" approach that Plaintiff urges the Court to follow specifically direct courts to consider (a) "the extent to which a person willfully enables fraudulent spoofing of telephone numbers or assists telemarketers in blocking Caller ID, by offering either functionality to clients" and (b) "whether a person who offers a calling platform service for the use of others has knowingly allowed its client(s) to use that platform for unlawful purposes." *Lucas*, 2019 U.S. App. LEXIS 32923, at 14-15 (6th Cir. Nov. 1, 2019) (quoting *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 at ¶ 30 (2015)). As Defendants properly point out, Plaintiff has not shown any evidence to support a favorable outcome for himself on either of these factors.

[19] Because the Court declines to grant Plaintiff summary judgment on this claim, it need not assess the issue of whether damages should be trebled.